UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARK DELOACH #182521,

    Plaintiff,

v.

RACHAEL VALLE,

    Defendant.

_____/

Case No. 2:22-cv-00031

Hon.  Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendant's motion for summary judgment. (ECF No. 22.) Plaintiff has not filed a response.

On February 15, 2022, Plaintiff – state prisoner Anthony Deloach – filed a Section 1983 complaint against Defendant Rachael Valle, who is employed in the mail room at Kinross Correctional Facility. (ECF No. 1.) Deloach's complaint is unverified. Deloach alleges that Valle violated his Constitutional rights by destroying outgoing mail containing an irreplaceable photograph.

Defendant Valle moves for summary judgment. Valle asserts that her only involvement in this incident was receiving the piece of mail at issue here after it was returned to the prison due to a bad address. Defendant Valle asserts that she did not destroy the mail and that it was mailed out of the facility a second time on August 26, 2021. Defendant Valle also argues that she was not personally involved in the activity that forms the basis of Deloach's complaint, that Deloach has failed to

demonstrate that he had no post-deprivation remedies, and that she is entitled to qualified immunity. It is respectfully recommended that the Court grant Defendant Valle's motion for summary judgment and dismiss this case.

**II. Factual Allegations**

Deloach says that on May 5, 2021, he completed a Michigan Department of Corrections (MDOC) disbursement authorization order form to allow him to send an oversized piece of mail. (ECF No. 1, PageID.3.) This request was granted six days later, on May 11, 2021. (*Id.*) Deloach says that he gave his piece of mail, which contained a letter and a portrait to Prison Counselor (PC) Kanaz.

Deloach then asserts that Defendant Valle held his mail and did not send it out for over 14 days. (*Id.*) Deloach says that in July he received information that his mail had been sent out of the facility on May 21, 2021. (*Id.*)

The mail was then returned to the facility, and when Deloach sought more information, Defendant Valle responded to his request. (*Id.*) Deloach attached a photocopy of the returned envelope to his complaint. (ECF No. 1-1.) The envelope appears to indicate that it was received at the prison by Defendant Valle on July 28, 2021. (*Id.*)

Deloach says that Defendant Valle failed to send him a mail rejection form to allow him to send the mail back out of the facility. (ECF No. 1, PageID.3.)

Deloach says that the package was again sent out of the facility on August 26, 2021. (*Id.*, PageID.4.) Deloach filed a grievance on this issue because he says that the contents of his package – an irreplaceable photograph and portrait – were

2

destroyed by Defendant Valle. (*Id.*) He notes that Callie Deloach never received the photograph. (*Id.*)

Deloach says that Defendant Valle destroyed his mail in violation of his Constitutional rights. (*Id.*) Deloach requests a declaratory judgment, injunctive relief, $75,000 in compensatory damages and $750,000 in punitive damages. (*Id.*, PageID.6.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005). When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138

F.3d 612, 614 (6th Cir. 1998) (*citing Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

### IV. Personal Involvement

Defendant Valle argues that contrary to Deloach's claim, she was not the mailroom supervisor and her only involvement in this matter was *receiving* the returned mail. Although Deloach stated during his deposition that he has no idea who destroyed his mail, he believes that Defendant Valle was responsible because she was mailroom supervisor. (ECF No. 23-3, PageID.104 (Deposition of Deloach).) However, Valle attests that she was a general office assistant assigned to the mailroom and that she was not the mailroom supervisor. (ECF No. 25-1, PageID.118.)

Deloach's assertions of supervisory liability are insufficient to survive summary judgment. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *Leach*, 891 F.2d at 1246. However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Valle's affidavit, however, shows that she was not a supervisor. She attested that:

> 5. I was assigned to work in the mail room, however I was not the mail room supervisor.
>
> 6. On or about July 28, 2021, an item of mail came into the facility as return to sender, with the sender being Mark Deloach #782521.
>
> 7. I logged the mail in on July 30, 2021.
>
> 8. The mail was opened and a copy of the contents were provided to Deloach.
>
> 9. I did not have any further interaction with the returned mail.
>
> 10. I did not destroy the items returned to the facility.
>
> 11. I did not receive any written communications from Deloach in regards to this mail.
>
> 12. I was later contacted by Business Manager Dumback in response to a grievance filed by Deloach.
>
> 13. While I was not personally involved, my understanding is that the mail was sent out from the facility on August 26, 2021.

(ECF No. 25-1, PageID.118 (signed copy), 23-2, PageID.96 (unsigned copy).)

First, Valle attests that she was not the mailroom supervisor, and Deloach offers nothing that contradicts this statement. Second, Valle attests that her only involvement with Deloach's package was to receive it on July 28, and return the contents to Deloach. And Deloach offers nothing to contradict this statement. It is important to note that Deloach's complaint is not verified and does not qualify as his affidavit.[1] Further, Deloach has tendered no evidence to support his claim that

---

[1] A verified complaint may satisfy the burden of the nonmovant to respond to a motion for summary judgment, but mere allegations or denials in unverified pleadings do not. *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999) (en banc).

Valle personally destroyed his letter. In fact, during his deposition, Deloach testified that he named Valle simply because she was, in his view, the supervisor there and responsible for following MDOC mail policy. (ECF No. 23-3, Page.ID.103-04).) In essence, Deloach's claim is based entirely on speculation regarding what he thinks happened.

In the opinion of the undersigned, Valle has established that there exists no genuine issue of material fact regarding her involvement with destruction of Deloach's mail. It is respectfully recommended that the Court dismiss Deloach's claim against Defendant Valle due to her lack of personal involvement.

### V.   Post Deprivation Remedies

Deloach claims that the photograph he intended to send out of the prison was destroyed in violation of MDOC policy and that his Constitutional rights were violated. Assuming that Deloach's allegations are true, his claim necessarily fails. Deloach asserts in part that his due process rights were violated. However, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy.[2]  *Parratt v. Taylor*, 451 U.S. 527, 542-44 (1981), (*overruled on other grounds by*) *Daniels v. Williams*, 474 U.S. 327 (1986); *see also Jones v.*

---

[2]   Numerous state post-deprivation remedies are available to Michigan prisoners. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a).

*Scroggy*, Nos. 87-5753, 87-5754, 1988 WL 12111, at *1 (6th Cir. Feb. 17, 1988) (affirming dismissal of Plaintiff's claim that prison officials failed to recover a radio and head phones stolen from him by another inmate because state provided adequate post-deprivation remedies). Deloach has not demonstrated that the State of Michigan's remedies are inadequate.

## VI. Qualified Immunity

Defendant Valle argues that she is entitled to dismissal of the complaint based upon qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his

8

conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he

> confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff, supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix, supra*, at 309 (quoting *Anderson, supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

In the qualified immunity context, if the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate. *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).

Defendant Valle has demonstrated that there exists no genuine issue of material fact in this case, thus entitling her to summary judgment. Deloach's lawsuit is based entirely upon speculation of what he thinks happened. Deloach has no evidence to contradict Defendant Valle's lack of involvement in the destruction of his mail. In the opinion of the undersigned, Defendant Valles is entitled to qualified immunity from liability.

## VII. Recommendation

It is respectfully recommended that the Court grant the motion for summary judgment and dismiss this case.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    March 26, 2024                        /s/ *Maarten Vermaat*
                                                MAARTEN VERMAAT
                                                U.S. MAGISTRATE JUDGE